1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11  KATHLEEN A. OVERS,              )   Civil No. 11cv00507 WQH(RBB)
                                    )
12              Plaintiff,          )   **REPORT AND RECOMMENDATION**
                                    )   **GRANTING IN PART AND DENYING**
13  v.                              )   **IN PART PLAINTIFF'S MOTION FOR**
                                    )   **SUMMARY JUDGMENT [ECF NO. 8]**
14  MICHAEL J. ASTRUE, Commissioner )   **AND GRANTING DEFENDANT'S**
    of Social Security,             )   **MOTION FOR REMAND [ECF NO. 9]**
15                                  )
                Defendant.          )
16  _____)

17       On March 14, 2011, Plaintiff Kathleen A. Overs filed a

18  Complaint against Defendant Michael J. Astrue, Commissioner of

19  Social Security, for Review and Remedy on Administrative Decision

20  Under the Social Security Act [ECF No. 1].  Overs challenges the

21  denial of her claim for disability insurance benefits.  (Compl. 1,

22  ECF No. 1.)  Defendant filed an Answer to Complaint on September

23  27, 2011 [ECF No. 5], and filed the Administrative Record the same

24  day [ECF No. 6].  On January 30, 2012, Plaintiff's Motion for

25  Summary Judgment was filed, along with a Memorandum of Points and

26  Authorities [ECF No. 8].  Defendant filed a Motion for Remand and

27  Opposition to Plaintiff's Motion for Summary Judgment on February

28  23, 2012, along with a Memorandum of Points and Authorities [ECF

                                    1

No. 9].  Astrue refiled the same Motion for Remand and Opposition
to Plaintiff's Motion for Summary Judgment again on February 26,
2012, along with the same Memorandum of Points and Authorities;
however, it was docketed as a "Response in Opposition re 8
[Plaintiff's] Motion for Summary Judgment" [ECF No. 10].

     The Court finds this matter is suitable for decision without
oral argument.  See S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons
set forth below, the Court recommends that the district court **GRANT**
in part and **DENY** in part Plaintiff's Motion for Summary Judgment
[ECF No. 8], and **GRANT** Defendant's Motion for Remand [ECF No. 9].

### I.  MEDICAL EVIDENCE

     On January 25, 2007, Plaintiff was evaluated at the San Diego
County Psychiatric Hospital by Dr. Young Ho Kang, the staff
psychiatrist.  (Admin. R. Attach. #7, 234-37, ECF No. 6.)  Overs
reported feeling depressed and anxious, as well as having
difficulty sleeping.  (Id. at 234.)  Plaintiff's depression
initially stemmed from a sexual assault that occurred more than
twenty years ago.  (Id.)  At the time of the assault, Plaintiff
claimed that she was forced into the bedroom of a police officer
who she was dating when two other police officers arrived; all
three officers participated in the sexual assault.  (Id.)  In
addition to her lingering depression from the incident, Plaintiff
stated that her depression had recently intensified because she was
terminated from her job at a bakery.  (Id.)  According to Overs,
she was fired after reporting to her supervisor that a fellow
employee had sexually fondled her.  (Id.)  Dr. Kang noted that the
subsequent assault brought back the sexual trauma and left
Plaintiff feeling scared, frustrated, helpless, and resentful.

(<u>Id.</u> at 234, 236.)  Overs asserted she was experiencing additional stress because her husband had been injured at work, causing financial strain on the couple and ultimately leading them to declare bankruptcy.  (<u>Id.</u>)

At the time of her evaluation by Dr. Kang, Overs was not taking any medication to treat her depression.  (<u>Id.</u> at 234.)  The doctor noted that Plaintiff was visibly sad, frustrated, and helpless, and he diagnosed her with post-traumatic stress disorder ("PTSD").  (<u>Id.</u> at 235.)  Dr. Kang prescribed Prozac and Trazodone for Overs, and he instructed her to pursue outpatient psychiatric care.  (<u>Id.</u> at 237.)

On March 14, 2007, the Plaintiff was evaluated at San Diego County Mental Health Services by Dr. Majid Naficy, a staff psychiatrist.  (<u>Id.</u> at 241-44.)  Again, she reported feeling depressed and anxious, as well as having flashbacks and feelings of terror related to her history of sexual abuse.  (<u>Id.</u> at 241-42.)  Specifically, Overs asserted that she frequently had nightmares involving multiple men trying to harm her.  (<u>Id.</u> at 241.)  The Plaintiff also complained that her anxiety caused her chest pain, shortness of breath, and sensations of having a heart attack.  (<u>Id.</u> at 242.)  Overs told Dr. Naficy that she had been prescribed Prozac but never had formal psychiatric treatment.  (<u>Id.</u>)  Plaintiff also indicated that she had taken the Prozac and noticed good results; she stopped the medication, however, after four weeks because she feared that it was aggravating her myotonia.  (<u>Id.</u>)  Dr. Naficy observed that Overs was calm and cooperative during the meeting, but her "affect was labile" when discussing her past sexual abuse (<u>Id.</u> at 243.)

On June 29, 2007, Dr. Sandra M. Eriks treated Plaintiff for myotonia, which caused her muscle pain and weakness in her legs, neck, lower back, side, and arms. (Id. at 297.) Overs also complained of pain and numbness in her wrists, hands, ankles, and feet. (Id.) The pain was purportedly exacerbated by cold temperature, exercise, and standing or sitting for any period of time. (Id.) In her notes, Dr. Eriks indicated that Plaintiff "is currently taking no medications." (Id.) Yet, another time, the doctor lists Prozac, Clonazepam, and Trazodone as medications Overs was currently taking. (Id. at 298.) Dr. Eriks determined that Plaintiff could lift and carry thirty pounds occasionally and twenty pounds frequently; she could sit, stand, or walk six hours in an eight-hour workday. (Id. at 300.) Finally, the doctor concluded that Overs could occasionally climb, stoop, kneel, and crouch, and that she had no manipulative, visual, communicative, or environmental limitations. (Id.)

Plaintiff, on August 24, 2007, sought treatment at the Sharp Memorial Hospital emergency room, complaining of facial pain and numbness that she had been experiencing for the past month. (Id. at 333.) She also complained of headaches on the left side of her forehead. (Id.) Overs was examined by Susan Rhinelander, a nurse practitioner. (Id.) Plaintiff reported that she had been prescribed Prozac, Trazodone, Klonopin, and Carbamazepine. (Id. at 335.) Yet, she had never taken the Carbamazepine and had not taken Klonopin or Trazodone for some time. (Id.) Rhinelander gave Plaintiff a prescription for Darvocet and diagnosed her with facial pain, paresthesia, and "Rule out trigeminal neuralgia." (Id. at 336-37.) Rhinelander also started Overs on a steroid treatment and

referred her back to her primary physician, Dr. Arthur Cardones. (Id.)

Over a year later, on October 6, 2008, Plaintiff saw Dr. Albert Nester for her depression and post-traumatic stress disorder. (Id. Attach. #8, 444.) Dr. Nester continued Overs on her current Prozac and Remeron medications. (Id.) When she met with him on November 3, 2008, the doctor observed that the Plaintiff had suffered from increased anxiety and insomnia since her last visit, most likely because she had missed some doses of her Prozac. (Id. at 447.) Overs told Dr. Nester that the Prozac made her feel "sluggish," so the doctor instructed her to split the prescribed dosage and change the time of day that she took it. (Id.) He treated Overs again on December 4, 2008, when he determined that her stress levels appeared "slightly better." (Id. at 449.) On January 8, 2009, Dr. Nester opined that although Plaintiff was "doing ok," her mood was "slightly anxious." (Id. at 453.)

Dr. Nester completed a "Mental Impairment Questionnaire" on April 7, 2009, when he evaluated Overs's ability to perform work-related activities on a day-to-day basis. (Id. at 474.) He concluded that Plaintiff would be "[u]nable to meet competitive standards" with regard to her ability to do the following:

> D. Maintain attention and concentration for two hour segments[;]
>
> E. Maintain regular attendance and be punctual within customary, usually strict tolerances[;]
>
> F. Sustain an ordinary routine without special supervision[;]
>
> G. Work in coordination with or proximity to others without being unduly distracted[;]

1    . . . .

2    I. Complete a normal workday and workweek without
3    interruptions from psychologically based symptoms[;]

. . . .

4

5    K. Accept instructions and respond appropriately to
criticism from supervisors[;]

6    L. Interact appropriately with the general public[;]
[and]

7

8    M. Respond appropriately to changes in a routine working
setting[.]

9  (<u>Id.</u> at 474-75.)

10                **II.   THE ADMINISTRATIVE HEARING**

11    On April 29, 2009, an administrative hearing was held before

12  Administrative Law Judge ("ALJ") Trembly.  (<u>Id.</u> Attach. #2, 24.)

13  Overs, her former attorney, Anthony Delollis, and vocational expert

14  Gloria Lasoff were present.  (<u>Id.</u>)  Judge Trembly heard testimony

15  from Plaintiff and her attorney, but not from the vocational

16  expert.  (<u>Id.</u> at 24-42.)

17    Overs's counsel testified that one of Plaintiff's most

18  disabling impairments was her trigemal neuralgia because it caused

19  her to suffer from disabling and painful headaches on a daily

20  basis.  (<u>Id.</u> at 27.)  Counsel further stated that Overs's myotonia

21  caused muscle cramping in her hands, feet, and legs.  (<u>Id.</u>)

22  Finally, Plaintiff's PTSD stemming from her history of sexual

23  trauma caused her to become a "shut-in" and fearful of venturing

24  into public without her husband.  (<u>Id.</u> at 27-28.)

25    The Plaintiff testified about her history of sexual abuse.  As

26  a child, she was molested by a teacher and a neighbor. (<u>Id.</u> at 29,

27  32.)  She was later raped by police officers and sexually assaulted

28  by a former coworker.  (<u>Id.</u> at 29-32.)  Overs submitted that her

1   myotonia caused constant pain and left her unable to sit or stand
2   for extended periods of time.  (Id. at 32-33.)  Her trigeminal
3   neuralgia made her nauseous and impaired her ability to read.  (Id.
4   at 33.)  Judge Trembly questioned Plaintiff about her prior jobs at
5   a daycare, a preschool, and a bakery.  (Id. at 34-37.)  The ALJ
6   noted that Overs had worked during the 1970's and 1980's, and
7   consistently from 1995 to 2006.  (Id. at 37.)  In 1987, the year
8   she was raped by the police officers, she earned almost $12,000.00.
9   (Id.)

10                    **III.   APPLICABLE LEGAL STANDARDS**

11  **A.   Generally**

12       To qualify for disability benefits under the Social Security
13  Act, an applicant must show two things:  (1) He or she suffers from
14  a medically determinable impairment that can be expected to last
15  for a continuous period of twelve months or more, or would result
16  in death; and (2) the impairment renders the applicant incapable of
17  performing the work that he or she previously performed or any
18  other substantially gainful employment that exists in the national
19  economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West Supp.
20  2010).  An applicant must meet both requirements to be classified
21  as "disabled."  Id.

22       Sections 205(g) and 1631(c)(3) of the Social Security Act
23  allow applicants whose claims have been denied by the Social
24  Security Administration to seek judicial review of the
25  Commissioner's final agency decision.  Id. §§ 405(g), 1383(c)(3).
26  The district court may affirm, modify, or reverse the
27  Commissioner's decision.  Id. § 405(g).  The court should affirm
28  the decision unless "it is based upon legal error or is not

                                    7

1  supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d

2  1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d

3  599, 601 (9th Cir. 1999)).  The district court may also remand the

4  matter to the Social Security Administration for further

5  proceedings.  42 U.S.C.A. § 405(g).

6  **B.   Treating Physicians**

7      The administrative law judge must consider all medical opinion

8  evidence.  20 C.F.R. § 404.1527(b) (2011).  According to the

9  regulations, a treating physician's opinion must be given

10  controlling weight if it is "well-supported by medically acceptable

11  clinical and laboratory diagnostic techniques and . . . not

12  inconsistent with the other substantial evidence in [the] case

13  record . . . ." Id. § 404.1527(d)(2).  If the treating physician's

14  opinion is not given controlling weight, the following factors are

15  examined to determine what weight to give the opinion:  (1) the

16  length of the treatment relationship and the frequency of

17  examination, (2) the nature and extent of the treatment

18  relationship, (3) the supportability of the opinion, (4) the

19  consistency of the opinion with the record as a whole, (5) the

20  specialization of the treating physician, and (6) any other factors

21  brought to the attention of the ALJ which tend to support or

22  contradict the opinion.  Id. § 404.1527(d)(2)(i)-(ii), (d)(3)-(6).

23      Opinions of treating physicians may only be rejected under

24  certain circumstances.  See Batson v. Comm'r of Soc. Sec. Admin.,

25  359 F.3d 1190, 1195 (9th Cir. 2004).  "Cases in [the Ninth Circuit]

26  distinguish among the opinions of three types of physicians:  (1)

27  those who treat the claimant (treating physicians); (2) those who

28  examine but do not treat the claimant (examining physicians); and

8

(3) those who neither examine nor treat the claimant (nonexamining physicians)." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (footnote omitted).

The standard for determining whether an ALJ properly rejected the opinion of a treating physician varies.  If the treating doctor's determination is not contradicted by another doctor, the ALJ must give clear and convincing reasons for rejecting the uncontradicted opinion.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>see also</u> <u>Spelatz v. Astrue</u>, 321 F. App'x 689, 692 (9th Cir. 2009); <u>Lester</u>, 81 F.3d at 830.  On the other hand, if the treating physician's conclusion is contradicted by another doctor, "'the ALJ must [resolve the conflict and] give specific, legitimate reasons for disregarding the opinion of the treating physician.'" <u>Batson</u>, 359 F.3d at 1195 (quoting <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992)); <u>see also</u> <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1042 (9th Cir. 2007).  An ALJ may discredit opinions "that are conclusory, brief, and unsupported by . . . objective medical findings." <u>Batson</u>, 359 F.3d at 1195.  Although a treating physician's opinion is given the most weight, an opinion on the ultimate issue -- disability -- is not binding on an ALJ. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2011).

**C.   <u>Remand for Further Proceedings</u>**

A district court may remand a Social Security disability decision under sentence four of 42 U.S.C. § 405(g).  <u>Hoa Hong Van v. Barnhart</u>, 483 F.3d 600, 605 (9th Cir. 2007).  That provision states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

9

or without remanding the cause for a rehearing."  42 U.S.C.A. §
405(g).  "A sentence-four remand is essentially a determination
that the Commissioner erred in denying benefits."  Havrylovich v.
Astrue, No. 09-1113-HA, 2011 U.S. Dist. LEXIS 7187, at *19  (D. Or.
Jan. 25, 2011) (citing Hoa Hong Van, 483 F.3d at 605).  After a
case is remanded and an additional hearing is held, the
Commissioner may modify or affirm the original findings of fact or
the decision.  42 U.S.C.A. § 405(g).

      A remand to the Commissioner for further proceedings or to
award benefits is within the court's discretion.  McAllister v.
Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  "'If additional
proceedings can remedy defects in the original administrative
proceedings, a social security case should be remanded.  Where,
however, a rehearing would simply delay receipt of benefits,
reversal [and an award of benefits] is appropriate.'"  Id. (quoting
Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).  "[T]he
proper course, except in rare circumstances, is to remand to an
administrative agency for additional investigation or explanation."
INS v. Ventura, 537 U.S. 12, 16 (2002).

## IV.  DISCUSSION

      In her Motion for Summary Judgment, Plaintiff asks the Court
to reverse the Commissioner's final decision and remand the case
for an award of benefits or further proceedings.  (Mot. Summ. J.
Attach. #1 Mem. P. & A. 12, ECF No. 8.)  First, Plaintiff alleges
that the ALJ erred because he did not consider the opinion of
Overs's treating physician, Dr. Nester.  (Id. at 6-7.)  Second,
Plaintiff maintains that Judge Trembly's finding that Plaintiff can
do other work is not supported by substantial evidence.  (Id. at 7-

8.)  Third, she alleges that the ALJ erred in relying on the "grid
rules." (<u>Id.</u> at 8-9.)  Fourth, according to Overs, the judge
failed to consider a letter written by Plaintiff's husband. (<u>Id.</u>
at 9-10.)  Finally, Judge Trembly improperly found that Overs was
not credible. (<u>Id.</u> at 10-11.)  The Plaintiff argues that the Court
should reverse the final decision and remand the case for the
payment of benefits. (<u>Id.</u> at 12.)  She contends that Dr. Nester's
opinion should be "accepted as a matter of law." (<u>Id.</u>)

In his Motion for Remand, Defendant concedes that the ALJ's
finding that Overs was not disabled at step five was not supported
by substantial evidence. (Mot. Remand Attach. #1 Mem. P. & A. 2
n.1, ECF No. 9.)  "Defendant asked Plaintiff to stipulate to remand
this matter for further proceedings." (<u>Id.</u>)  But at the time the
Motion to Remand was filed on February 23, 2012, Plaintiff had not
agreed to join in a motion to remand. (<u>Id.</u>)  Defendant argues
that, nonetheless, remand is appropriate for consideration of the
medical source opinions. (<u>Id.</u> at 2.)

"Administrative law judges are responsible for reviewing the
evidence and making findings of fact and conclusions of law."  20
C.F.R. § 404.1527(f)(2).  Conflicts in the evidence should be
resolved by the Commissioner, not the courts.  <u>See</u> <u>Laffoon v.</u>
<u>Califano</u>, 558 F.2d 253, 254 (5th Cir. 1977); <u>see also</u>, <u>Spraque v.</u>
<u>Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987).  The ALJ is the final
arbiter of ambiguities in the medical evidence.  <u>Tommasetti v.</u>
<u>Astrue</u>, 533 F.3d 1035, 1041-42 (9th Cir. 2008).  The Commissioner's
decision must be upheld when the evidence would support more than
one rational interpretation.  <u>Havrylovich</u>, 2011 U.S. Dist. LEXIS
7187, at *4 (citing <u>Thomas</u>, 278 F.3d at 954).

1    The Ninth Circuit has articulated the standard district courts

2   must apply when deciding whether to remand a matter for further

3   proceedings:

> Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

12  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citations

13  omitted); see Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135,

14  1138 (9th Cir. 2011) (applying the standard outlined in Benecke).

15  "A claimant is not entitled to benefits under the statute unless

16  the claimant is, in fact, disabled, no matter how egregious the

17  ALJ's errors may be." Strauss, 635 F.3d at 1138.

18  **A.    Failure to Consider Dr. Nester's Opinion**

19      Plaintiff initially contends that the ALJ improperly ignored

20  the opinion of Overs's treating physician, Dr. Nester. (Mot. Summ.

21  J. Attach. #1 Mem. P. & A. 6, ECF No. 8.)  The doctor opined that

22  Plaintiff was unable to meet competitive standards in several work

23  areas but the ALJ did not weigh, or even mention, Dr. Nester's

24  opinion.  (Id.)  Because the treating physician's opinion was not

25  adequately rejected, it should be accepted as a matter of law and

26  the case should be remanded for an award of benefits. (Id. at 7.)

27      Astrue concedes that the ALJ should have discussed Dr.

28  Nester's opinion and articulated the reasons for rejecting it.

(Mot. Remand Attach. #1 Mem. P. & A. 2-3, ECF No. 9.)  He argues
that remand is the appropriate remedy, not an award of benefits.
(Id. at 3.)  On remand, Defendant asks for an instruction to
consider Dr. Nester's opinion and articulate specific and
legitimate reasons for rejecting the opinion, if appropriate.
(Id.)  The Commissioner also seeks an instruction to reassess
Overs's residual functional capacity and obtain vocational expert
testimony on what jobs exist for Plaintiff in light of her age,
education, residual functional capacity, and other vocational
factors.  (Id.)

     In his decision, the ALJ determined that Plaintiff was
impaired with myotonia, trigeminal neuralgia, and post-traumatic
stress disorder.  (Admin. R. Attach. #2, 16, ECF No. 6.)  Overs did
not have an impairment that meets one of the listed impairments.
(Id. at 17.)  Judge Trembly further concluded that after
considering the entire record, Plaintiff had the RFC to perform
light work, but she was limited to simple, repetitive tasks in a
nonpublic work environment.  (Id.)  The ALJ found that there were
jobs that existed in significant numbers that Overs could perform.
(Id. at 22.)

     Dr. Nester treated the Plaintiff on October 6, November 3,
December 4, 2008, and January 8, 2009.  (Id. Attach. #8, 444, 447,
449, 453.)  Dr. Nester, opined on April 7, 2009, that Overs was
"[u]nable to meet competitive standards" for concentration and
punctuality, sustaining an unsupervised routine, working with
others, completing a normal work week, accepting criticism,
interacting with others, and responding appropriately to changes in
a work setting.  (Id. at 474-75.)  The opinion by Dr. Nester, a

                              13                    11cv00507 WQH(RBB)

1    treating physician, that Overs was unable to meet competitive
2    standards in several work areas is inconsistent with, for example,
3    treating physician Dr. Eriks's finding that Plaintiff had no
4    visual, communicative, or environmental limitations.  (See Admin.
5    R. Attach. #8, 300, 474-75, ECF No. 6.)

6        As discussed, to reject the opinion of an examining or a
7    treating physician that is contradicted by other medical opinions,
8    the ALJ is required to give specific and legitimate reasons for
9    doing so.  See Batson, 359 F.3d at 1195; Lester, 81 F.3d at 830-31.
10   Conflicts in the medical evidence are resolved by the Commissioner.
11   Sprague, 812 F.2d at 1230.

12       Judge Trembly gave no reasons for rejecting Dr. Nester's
13   opinion that Overs could not adequately concentrate, attend work
14   regularly, or complete a workday without interruptions.  See
15   Strauss, 635 F.3d at 1138.  There may or may not be evidence in the
16   record that the ALJ can rely on to render the required "specific"
17   and "legitimate" reasons for disregarding Dr. Nester's opinions;
18   regardless, the ALJ is in a better position to perform the task
19   than this Court.  See McAllister, 888 F.2d at 603; Gonzalez v.
20   Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("We are wary of
21   speculating about the basis of the ALJ's conclusion . . . .").  The
22   Administration should address the outstanding issues before making
23   a decision as to Overs's disability.  But see Strauss, 635 F.3d at
24   1138; see also Benecke, 379 F.3d at 595 (explaining that allowing
25   the ALJ on remand to decide and again explain his reasons for
26   discrediting the treating and examining doctors' opinions "would
27   create an unfair 'heads we win; tails, let's play again' system of
28   disability benefits adjudication[]").  Here, it is not clear from

the record that ALJ Trembly would be required to find Plaintiff

Overs disabled if Dr. Nester's opinion was credited.  See Strauss,

635 F.3d at 1138.

In light of Judge Trembley's failure to articulate specific

and legitimate reasons for rejecting Dr. Nester's opinion that

Overs was unable to meet competitive standards in several areas,

the matter should be remanded to allow Judge Trembly to explain his

reasons for doing so.  See id. Springer, 1996 U.S. App. LEXIS

18296, at *8 (upholding the district court's decision to remand to

allow the ALJ to explain his reasons for discounting the

evaluations of two of the five physicians when it was clear from

the record that the medical evidence from the five physicians was

conflicting); see also Benecke, 379 F.3d at 594, 594 n.3

(concluding that the decision to deny benefits should be reversed

because the ALJ gave a lengthy explanation for discrediting the

treating physicians' opinions, the reasoning was legally

insufficient, the record was fully established, and the evidence

compelled a finding of disability); Marquez v. Astrue, No. ED CV

09-1921-E, 2010 U.S. Dist. LEXIS 41054, at *7-8 (C.D. Cal. Apr. 27,

2010) (applying Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.

2000), to decide whether reversal or remand is appropriate).  In

Overs's case, there are outstanding issues that need to be

addressed before a disability determination can be made.

**B.**    **Error in Applying the Grids**

Next, Overs contends that because her impairments are

nonexertional, Judge Trembly erred in relying on the medical-

vocational rules instead of referring to the expertise of a

vocational witness.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 8-9,

ECF No. 8.)  The Plaintiff argues that the ALJ's finding that her limitations did not reduce the occupational base of unskilled light work is not supported by the record.  (Id. at 8.)  Overs further alleges that without some individualized explanation of what jobs she can perform given her disabilities, the ALJ's determination is not supported by substantial evidence.  (Id.)  Accordingly, Plaintiff contends the case should be remanded for the ALJ to consider the testimony of a vocational witness.  (Id. at 9.)

Defendant suggests that, on remand, the Commissioner should be instructed to reassess Overs's RFC and obtain supplemental vocational expert testimony to determine what jobs are available to Plaintiff in light of her age, education, functioning capacity, and various vocational factors.  (Mot. Remand Attach. #1 Mem. P. & A. 3, ECF No. 9.)

An ALJ typically may rely on the grids when the plaintiff's impairments consist of exertional limitations.  See Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576-77 (9th Cir. 1988).  When the plaintiff's impairments reflect significant nonexertional limitations, however, "the grids are only a framework and a [vocational expert] must be consulted."  Moore, 216 F.3d at 870; see also Desrosiers, 846 F.2d at 579 ("If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, that claimant is said to have a non-exertional (not strength-related) limitation that is not covered by the grids.") (Pregerson, J. concurring).

The grids are inapplicable when the claimant has both exertional and significant nonexertional limitations; then, the ALJ must consult a vocational expert to determine whether jobs for the

plaintiff exist in the national economy, despite her impairment. Moore, 216 F.3d at 869-70.  In that situation, careful consideration of an individual's RFC is required.  See Soc. Sec. Ruling 85-15, 1985 SSR LEXIS 20, at *10 (1985).  The ALJ may base a finding of not disabled "on the fact that a claimant can perform some, although not all, . . . work only if such a finding is supported by both the medical evidence and the testimony of a vocational expert."  Desrosiers, 846 F.2d at 580.  To better assess the plaintiff's prospects for work, the ALJ should give the vocational expert a hypothetical or series of hypothetical scenarios that take into account all the claimant's limitations and restrictions.  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  The vocational expert must identify a substantial occupational base to sustain a finding of not disabled. See Soc. Sec. Ruling 85-15, 1985 SSR LEXIS 20, at *8 ("If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience.").

Although vocational expert Gloria Lasoff appeared at Over's administrative hearing, Lasoff did not testify.  (Admin. R. Attach. #2, 24-42, ECF No. 6.)  As previously noted, Judge Trembly determined that Plaintiff was impaired with myotonia, trigeminal neuralgia, and post-traumatic stress disorder.  (Id. at 16.)  He then concluded that Overs had the capacity to perform light work, limited to simple, repetitive tasks in a nonpublic work environment.  (Id. at 17.)  Judge Trembly's determination that she was limited to "light work" necessitates a finding that Plaintiff

17

suffered from some exertional impairments.  See 20 C.F.R. §
404.1567 ("To determine the physical exertion requirements of work
in the national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy.")  Additionally, the conclusion that
Overs had post-traumatic stress disorder necessitates a finding
that she also had nonexertional impairments.  See 20 C.F.R. §
404.1569a(c) (2012) (listing nervousness, anxiety and depression as
nonexertional limitations); Holohan v. Massanari, 246 F.3d 1195,
1208-09 & n.12 (9th Cir. 2001) (nothing that psychiatric
impairments are nonexertional limitations).  Thus, ALJ Trembly
determined that Overs suffered from both exertional and
nonexertional limitations.

    "[T]he fact that a non-exertional limitation is alleged does
not automatically preclude application of the grids." Desrosiers,
846 F.2d at 577.  Rather, the ALJ must first determine whether a
claimant's "non-exertional limitations significantly limit the
range of work permitted by his exertional limitations." Id.
(citations omitted).  If so, the guidelines would be inapplicable.
Id.  Here, the ALJ did not address why Plaintiff's nonexertional
limitations did not significantly limit her functional capacity,
thus making a vocational expert unnecessary.  See id.  In light of
Judge Trembly's failure to articulate any basis for failing to
consult with a vocational expert, the matter should be remanded to
permit him to explain his reasons for doing so or to obtain
supplemental vocational expert testimony.  Holohan, 246 F.3d at
1208-09, 1211 (remanding the case when ALJ improperly relied solely
on the medical-vocational guidelines with no vocational expert
testimony).

C.   __Failure to Consider the Letter from Mark Overs__

    The Plaintiff also argues that ALJ Trembly improperly
disregarded a letter written by Overs's husband, Mark Overs, that
was attached to the administrative record.  (Mot. Summ. J. Attach.
#1 Mem. P. & A. 9, ECF No. 8.)  In support of Plaintiff's
application for benefits, her husband wrote a letter describing
Plaintiff's limitations.  (Admin. R. Attach. #8, 470-71, ECF No.
6.)  He discussed her lack of memory and concentration, mood
swings, and habit of humming during difficult moments.  (Id.)
Plaintiff argues that the ALJ improperly did not discuss the
letter.  (Mot. Summ. J. Attach. #1 Mem. P. & A. 9-10, ECF No. 8.)
She contends that the ALJ must consider observations from
nonmedical sources about how a claimant's impairments impact her
ability to work.  (Id. at 9.)  Defendant does not address this
issue in his Motion for Remand.  (See generally Mot. Remand Attach.
#1 Mem. P. & A. 1-4, ECF No. 9.)

    An ALJ may consider lay witness testimony to determine the
severity of a claimant's impairments and how the impairments affect
his ability to work.  20 C.F.R. §§ 404.1513(d)(4), (e),
416.913(d)(4), (e) (2012); Stout v. Comm'r, 454 F.3d 1050, 1053
(9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.
1996).  "Descriptions by friends and family members in a position
to observe a claimant's symptoms and daily activities have
routinely been treated as competent evidence."  Sprague v. Bowen,
812 F.2d at 1232; see also Bojarski v. Astrue, No. C09-0833-MAT,
2010 U.S. Dist. LEXIS 24081, at *24-34 (W.D. Wash. Feb. 25, 2010)
(discussing numerous letters submitted by plaintiff's friends and
family members and determining that the ALJ erred in failing to

provide germane reasons for rejecting statements made in the
letters).  Lay witness testimony by friends and family members who
have observed a claimant on a daily basis "constitutes qualified
evidence" that the ALJ must consider.  Sprague, 812 F.2d at
1231-32; see Smolen, 80 F.3d at 1289 (noting that testimony from
lay witnesses who see the plaintiff on a daily basis and are often
family members is particularly valuable); Dodrill v. Shalala, 12
F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell
whether someone is suffering or merely malingering . . . this is
particularly true of witnesses who view the claimant on a daily
basis . . . .").  The ALJ may discount the testimony of lay
witnesses only for "reasons that are germane to each witness."
Dodrill, 12 F.3d at 919; see Regennitter v. Comm'r, 166 F.3d 1294,
1298 (9th Cir. 1999).

     Judge Trembly did not reference Mark Overs's letter in his
opinion.  (See generally Admin. R. Attach. #2, 14-23, ECF No. 6.)
The ALJ failed to provide specific reasons, germane to Mark Overs,
for discounting his statements about his wife's impairments.  See
Dodrill, 12 F.3d at 919.  Further proceedings would be useful
because the record is unclear as to whether the ALJ would be
required to find Plaintiff disabled if he had properly considered
Mark Overs's letter.  Accordingly, remand is warranted to address
the letter from Plaintiff's husband.  See Paap v. Astrue, No. 3:10-
CV-6303-HZ, 2012 U.S. Dist. LEXIS 25417, at *21-23, 36-37 (D. Or.
Feb. 28, 2012) (granting remand for failure to articulate reasons
for rejecting lay witness statements made by a friend of claimant);
see also Petite v. Astrue, No. ED CV 09-1347-PLA, 2010 U.S. Dist.
LEXIS 54009, at *21-27 (C.D. Cal. June 1, 2010) (remanding for

1  failure to provide reasons for discounting testimony of claimant's

2  wife); Bojarski, 2010 U.S. Dist. LEXIS 24081, at *33-34.

3  **D.   Credibility Determination**

4        Finally, Plaintiff argues that the ALJ's finding that Overs

5  was not credible is not supported by clear and convincing evidence.

6  (Mot. Summ. J. Attach. #1 Mem. P. & A. 11, ECF No. 8.)  Overs

7  contends that the ALJ failed to provide specific reasons for

8  finding that Plaintiff was not credible.  (Id.)  Further, she

9  argues that Judge Trembly was "obsessed" with her failure to follow

10  the treatment regimine prescribed by her physicians, but Overs was

11  in continuous treatment from January 2007 to April 2009.  (Id.)

12  The Defendant does not address this issue in his Motion for Remand.

13  (See generally Mot. Remand Attach. #1 Mem. P. & A. 1-4, ECF No. 9.)

14        "In order for the ALJ to find [claimant's] testimony

15  unreliable, the ALJ must make 'a credibility determination with

16  findings sufficiently specific to permit the court to conclude that

17  the ALJ did not arbitrarily discredit claimant's testimony.'"

18  Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir.

19  2010) (quoting Thomas, 278 F.3d at 958).  In evaluating the

20  credibility of a plaintiff's testimony regarding subjective pain,

21  the adjudicator must engage in a two-step analysis.  Vasquez v.

22  Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504

23  F.3d at 1035-36); see Batson, 359 F.3d at 1196.  "'First, the ALJ

24  must determine whether the claimant has presented objective medical

25  evidence of an underlying impairment which could reasonably be

26  expected to produce the pain or other symptoms alleged.'"  Vasquez,

27  572 F.3d at 591 (quoting Lingenfelter, 504 F.3d at 1036).  Second,

28  if the claimant satisfies the first step and there is no evidence

of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms if he gives "'specific, clear and convincing reasons'" for doing so.  Id. (quoting Lingenfelter, 504 F.3d at 1036); Smolen, 80 F.3d at 1283-84.

Here, Judge Trembly initially determined that Overs's impairments "could reasonably be expected to cause the alleged symptoms . . . ." (Admin. R. Attach. #2, 21, ECF No. 6.)  Neither the Plaintiff nor the Defendant challenges this conclusion.  The first prong of the ALJ's inquiry regarding Plaintiff's credibility is therefore satisfied.  See Vasquez, 572 F.3d at 591.  The issue, then, is whether Judge Trembly provided clear reasons for the adverse credibility finding that are supported by the evidence in the record.

The Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing."  Reddick v. Charter, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834).  To support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record that demonstrate that [the plaintiff] is in less pain than she claims.'"  Vasquez, 572 F.3d at 592 (quoting Dodrill, 12 F.3d at 918).  The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible."  Dodrill, 12 F.3d at 918.  A reviewing court should not be forced to speculate as to the grounds for an administrative law judge's rejection of a plaintiff's allegations of disabling pain.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); see also Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the ALJ must build

22

1    an accurate and logical connection between the evidence and the

2    decision).

3         In general, questions of credibility are for the ALJ to

4    resolve.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

5    Courts should not "second-guess" an ALJ's credibility

6    determinations.  Allen v. Heckler, 749 F.2d 577, 580 (9th Cir.

7    1984).  If the evidence is conflicting and could be rationally

8    interpreted more than one way, the court must uphold the ALJ's

9    decision.  Id. at 579.

10        Social Security Ruling 96-7p provides the relevant standard:

11        4. In determining the credibility of the individual's
          statements, the adjudicator must consider the entire case
12        record, including the objective medical evidence, the
          individual's own statements about symptoms, statements and
13        other information provided by treating or examining physicians
          or psychologists and other persons about the symptoms and how
14        they affect the individual, and any other relevant evidence in
          the case record.  An individual's statements about the
15        intensity and persistence of pain or other symptoms or about
          the effect the symptoms have on his or her ability to work may
16        not be disregarded solely because they are not substantiated
          by objective medical evidence.

17
          5. It is not sufficient for the adjudicator to make a
18        single, conclusory statement that 'the individual's
          allegations have been considered' or that 'the
19        allegations are (or are not) credible.'  It is also not
          enough for the adjudicator simply to recite the factors
20        that are described in the regulations for evaluating
          symptoms.  The determination or decision must contain
21        specific reasons for the finding on credibility,
          supported by the evidence in the case record, and must be
22        sufficiently specific to make clear to the individual and
          to any subsequent reviewers the weight the adjudicator
23        gave to the individual's statements and the reasons for
          that weight.

24

25   Soc. Sec. Ruling 96-7p, 1996 SSR LEXIS 4, at *2-4.

26        The Ninth Circuit has articulated the grounds on which an ALJ

27   may properly decide to discredit a claimant's testimony:

28        In weighing a claimant's credibility, the ALJ may
          consider [claimant's] reputation for truthfulness,

23

1       inconsistencies either in his testimony or between his
      testimony and his conduct, his daily activities, his work
2       record, and testimony from physicians and third parties
      concerning the nature, severity, and effect of the
3       symptoms of which he complains.

4 Light v. Comm'r of Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

5 1997) (citations omitted).  Where the ALJ's credibility assessment

6 is supported by substantial evidence, it will not be disturbed even

7 where some of the reasons for discrediting a claimant's testimony

8 were improper.  Tonapetyan, 242 F.3d at 1148; see Carmickle v.

9 Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008).

10       Here, Judge Trembly listed ten reasons for finding that

11 Plaintiff was not fully credible:

12       However, to the extent that it is alleged that the
      claimant cannot perform work at the residual functional
13       capacity as recited above, the Administrative Law Judge
      finds those allegations are not totally credible for the
14       following clear and convincing reasons.

15       **First**, the claimant's activities of daily living include;
      independently caring for her own personal hygiene;
16       cooking; cleaning; shopping; and driving a vehicle
      (Exhibit 8F).  These activities did not indicate a
17       disabling level of impairment of the claimant's residual
      functional capacity.
18

19       **Second**, during the January 25, 2007, psychiatric
      evaluation at the San Diego County Psychiatric Hospital
20       emergency department, by Dr. Kang, it was noted that the
      claimant was not currently taking any prescription
21       medication for any impairment.  This is not consistent
      with a disabling level of impairment.  **Third**, it was also
22       noted during the January 25, 2007, evaluation, by Dr.
      Kang, that the claimant was referred for outpatient
23       psychiatric treatment; however, based on her subsequent
      psychiatric assessment at the San Diego County Mental
24       Health Services on March 14, 2007, she never pursued
      outpatient treatment and she just took the prescribed
25       medication for four weeks and then discontinued it.  The
      Regulations state, "in order to get benefits you must
26       follow the prescribed treatment, if you do not follow the
      prescribed treatment without a good reason, we will not
27       find you disabled" (20 CFR 404.1530 and 416.930).  Since
      there were no allowable reasons offered for discontinuing
28       the prescribed medication and for not following up with
      the outpatient mental health treatment, the claimant
      cannot be denied benefits based on this regulation.

**Fourth**, during the March 14, 2007, evaluation at the San Diego County Psychiatric Center, the claimant reported that she never had any formal psychiatric treatment, never been psychiatrically hospitalized, and she denied suicide attempts.  **Fifth**, it was also noted during the March 14, 2007, mental status evaluation that the claimant displayed no significant psychomotor agitation or retardation; she was calm and cooperative in the interview; her thought process was linear, logical and goal-directed; and she denied any hallucinations, suicidal ideation, or homicidal ideation.

**Sixth**, at the June 29, 2007, consultative internist examination by Dr. Eriks, the claimant reported that she has been on Darvocet in the past for pain, but was not currently on any medications.

**Seventh**, Dr. Eriks reported after the June 29, 2007 evaluation, that other than the mild tenderness and slight paraspinous muscle spasm in the lower thoracic spine and mild kyphoscoliosis in the lower thoracic spine and mild kyphoscoliosis in the lower thoracic spine, the remainder of claimant's examination was grossly normal.

**Eighth**, when the claimant was seen at the Sharp Grossmont Hospital Emergency room on August, 24, 2007, she reported that her prescribed medications included Prozac, Trazadone, Klonopin, and Carbamazepine; however, she had never started taking the Carbamazepine and had not taken the Klonopin or Trazedone for awhile.  Again, the claimant can be found "not disabled" for not following prescribed treatment (20 CFR 404.1530 and 416.930).

**Ninth**, when discussing the claimant['] s impairments, no physician, neither any of the claimant['] s treating physicians or a State Agency ever opined that listing level limitations were ever met or equaled.  **Tenth**, the objective evidence of the claimant's medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period of 12 or more continuous months.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Admin. R. Attach. #2, 20-21, ECF No. 6.) (emphasis in original)

Judge Trembly identified numerous instances in which Plaintiff failed to take medications as prescribed or follow a physician-recommended course of treatment.  The ALJ noted that at her January 25, 2007 psychiatric evaluation by Dr. Kang, Overs was not taking any prescription medication, which was inconsistent with her alleged disabling pain.  (Id. at 20.) Likewise, Plaintiff stated during her June 29, 2007 appointment with Dr. Eriks that she was not on any medication. (Id.)  Overs also failed to pursue recommended outpatient psychiatric treatment and take her prescribed Carbamezepine medication.  (Id. at 20-21.)

An ALJ may rely on evidence of a claimant's failure to take medication when questioning the claimant's credibility. Esquivel v. Astrue, No. 5:11-CV-00905 PSG, 2012 U.S. Dist. LEXIS 50481, at *17-18 (N.D. Cal. Apr. 10, 2012) (citing Moncada v. Chate, 60 F.3d 521, 524 (9th Cir. 1995)). "[N]oncompliance with treatment may be a clear and convincing reason for an adverse credibility determination." Kral v. Astrue, No. 1:10-cv-01483 JLT, 2011 U.S. Dist. LEXIS 106642, at *18 (E.D. Cal. Sept. 20, 2011) (citing Fair, 885 F.2d at 603); Pharris v. Astrue, No. 1:10-cv-01323 JLT, 2011 U.S. Dist. LEXIS 99485, at *25, (E.D. Cal. Sept. 2, 2011) (same). Judge Trembly properly considered these factors when finding that Overs was not fully credible.  The record supports his conclusion.

Moreover, the ALJ cited numerous inconsistencies between the Plaintiff's testimony and the evidence in the record.  For example, the judge recognized instances where Overs conceded

that she was not taking any prescribed medications, which
conflicted with her alleged disabling impairments. (Admin. R.
Attach. #2, 20, ECF No. 6.)  The ALJ also considered that
Plaintiff's thought process was "linear, logical and goal-
directed" during her March 14, 2007 evaluation. (<u>Id.</u>)
Similarly, Overs's June 29, 2007 examination was "grossly
normal," which was inconsistent with her complaints. (<u>Id.</u>)

     "[T]he adjudicator may not discredit a claimant's
testimony of pain and deny disability benefits <u>solely</u> because
the degree of pain alleged by the claimant is not supported by
objective medical evidence." <u>Bunnell</u>, 947 F.2d at 346-47
(emphasis added).  Nonetheless, "[w]hile subjective pain
testimony cannot be rejected on the sole ground that it is not
fully corroborated by objective medical evidence, the medical
evidence is still a relevant factor in determining the
severity of the claimant's pain and its disabling effects."
<u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).  As
discussed, Judge Trembly properly provided other specific,
convincing reasons for discrediting Overs's testimony, such as
her failure to take prescribed medications, that are supported
by the evidence in the record.  His credibility determination
was therefore not based solely on inconsistencies between
Overs's testimony and objective medical evidence.

     The ALJ also referred to Plaintiff's activities of daily
living to illustrate inconsistencies between her testimony --
that she is in pain, is fearful of venturing in public, and
cannot sit or stand for extended periods of time — and her
conduct -- cooking, cleaning, shopping, ane driving. (Admin.

R. Attach. #2, 20, ECF No. 6.)  An ALJ may consider the
claimant's daily activities and may reject excess pain
allegations where the activities contradict the claimant's
other testimony.  <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir.
2007).  Judge Trembly properly referred to Overs's activities
of daily living to illustrate that they were not consistent
with Plaintiff's testimony regarding her disabling level of
impairment.  <u>See</u> <u>id.</u>  The record also supports this
determination.

Nonetheless, Judge Trembly provided multiple specific,
detailed bases for his credibility assessment, which are
supported by the evidence in the record.  <u>Turner</u>, 613 F. 3d at
1224.

## V.   CONCLUSION AND RECOMMENDATION

Plaintiff's Motion for Summary Judgment [ECF No. 8]
should be **GRANTED** in part and **DENIED** in part.  Overs's request
to remand the matter for further administrative proceedings
should be **GRANTED**, but her request for an order reversing the
ruling should be **DENIED**.  The Defendant's Motion to Remand
[ECF No. 9] should be **GRANTED**.

This Report and Recommendation will be submitted to the
United States District Court Judge assigned to this case,
pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any
party may file written objections with the Court and serve a
copy on all parties on or before July 31, 2012.  The document
should be captioned "Objections to Report and Recommendation."
Any reply to the objections shall be served and filed on or
before August 14, 2012.  The parties are advised that failure

1    to file objections within the specified time may waive the

2    right to appeal the district court's order.  <u>Martinez v. Ylst</u>,

3    951 F.2d 1153 (9th Cir. 1991).

4

5    Dated:   July 16, 2012

6                                   RUBEN B. BROOKS
                                    United States Magistrate Judge

7    cc:  Judge Hayes
             All Parties of Record

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28